Good morning. I see people coming in. Your faces are not visible. So everyone who's going to be a part of the case who is going to be arguing, please let us see your faces. Good morning, your honors. Good morning, Mr. Yeastine and Ms. Reed. Are the two of you going to be the only people who argue? Yes, your honor. Okay. All right, great. Well, I see several other people here. I am told that they're student observers and we welcome you. Actually, when I looked on the screen, I saw DePaul and I'm from DePaul. So before you close out, I want to see your face for a minute so I can tell the dean you were here. All right. For the Apple lot, you have 15 minutes if you want to reserve some time for rebuttal. You can tell me how much time you want to reserve. I'd like to hold two minutes back, your honor. All right, great. And of course, the Apple has 15 minutes. If we ask questions and we have to extend the time, we certainly will. In arguing, I assure you, we have read the briefs. We've read them carefully. We have read the record. At least two of us have looked at the oral argument in Brown. I'm just interested, Mr. Yeastine or Ms. Reed, have you listened to Brown's oral arguments? Yes, I have, your honor. Okay, great. So we all know we're on the same page. Whenever you're ready, you can proceed, Mr. Yeastine. Good morning, your honor. May it please the court. This coming Sunday will mark 34 years that Larry Reed has been in custody on a life sentence, which the legislature has since made clear and never authorized. That life sentence was erroneously imposed based on a prior conviction for conduct when Mr. Reed was 17, the conviction when he was 18. Our position as the legislature and the Supreme Court in Stewart make it clear that that kind of youthful behavior was not intended to trigger recidivist sentencing. Now, just as the other panels did in the Kenneth Durant and Coren Brown cases, this court should reverse the denial, leave to file Mr. Reed's successive petition, vacate his sentence, and order resentencing. Mr. Yeastine, before you go further, I just have a question. So this issue is currently before the Illinois Supreme Court, but you asked us not to wait and to decide this case now. Why should we not stay the case? A few reasons, your honor. The first is, as a frank practical matter, we can never be certain whether the Illinois Supreme Court is actually going to decide the issue that is before it. Now, there's nothing that's a strong hint from the Brown oral argument that might be the case, but it's not an unusual thing for a case to get up there and then to go away for reasons that the litigants didn't anticipate. And there's another one, is my client, it appears that he's already served the time of even two consecutive mass Klaxexus sentences on this because he's been in custody since December of 1991. There's a particular, you know, if we are going to be able to give him substantive relief, he has an ongoing due process violation at this point. It is very much what it looks like, and we want to move forward on resentencing. Now, there's one important fact that I think does distinguish what led to the Durant resentencing that's going on in the Corwin-Brown case, is in a successive petition, a follow-on petition in this case, this is noted in the statement of facts, raising my client refiled through counsel after Durant was decided, and the state, in an answer, conceded the argument and told the circuit court to order resentencing. As of this morning, that answer is still on file, and I've been noting for this court, as this litigation has gone on, that that's there. Now, that narrows the issues in this case, I think, some, is if the state was going to... We're talking about a legal question that we get to review de novo, so we don't have to accept however you characterize what the state said. I know you characterize it as a concession state does not. Here's where I would draw a line. I would agree that this court doesn't have to accept the state's concession on this underlying statutory question that I'd love to tell you all about. Where I think it does come in is whether there's some other affirmative defenses that the state might claim later on. The brief makes a gesture toward res judicata based on a 2003, I believe, petition. That's waived in that subsequent answer because res judicata is a waivable affirmative defense, and so is non-retroactivity of a statute. So if it comes to a question of remedy and whether this court says to go to third stage proceedings or to go directly to a resentencing, the fact that the state has already said go to that resentencing indicates that that path should be clear. And it surely says that there's not something coming out of left field that at a future proceeding that would stop Mr. Reid from being resentenced. Now, I'd like to get on to this question about the statute. And I think that Stewart does control because we have the same language in the same legislation in an adjacent statute that has the same function. So the legislature must have intended the same thing. People v. Stewart tells us that this was clarifying it, that for subsection B of the recidivism statute, it always meant that prior offenses for somebody under 21 didn't count. When the legislature chose that exact same language talking about, quote, the first offense had to be committed when the person was 21 years of age or older, in subsection A as well, it should be treated exactly the same and just as clarifying. But Stewart relied on a couple of things, that there was a conflict in the appellate courts about interpreting it. And I'm sorry, I forget the other element of it. But most importantly, I'm sorry, that there was a 21, I think, it was always in the class X statute, whereas there was no A in A. Yeah, thank you, Justice. That's the other point, but we are not present here with a subsection A. How can Stewart lead us to that same conclusion? I think Stewart necessitates the conclusion. And maybe I'm going after the premise of the question a little bit, is we're not operating on a blank slate. Stewart is now there in terms of what this language means. And now we have the determination from the Illinois Supreme Court that this language meant a clarification. It meant a clarification. It's not an interpretation so much of the words. It was an interpretation about what the legislature did to subsection B, that it was a clarification. Well, here's why I think these parallel words are important, is because it would be border on absurd to think that the legislator is there saying, well, we're intending this to be retroactive and clarify what this entire history of the statute meant for subsection B. So we're going to use this phrase, first offense was committed when 21 years of age, and then turn around and say, we think courts should limit the application for subsection A. How can we ensure that limitation? And then use that exact same phrase, the first offense was committed when the person was 21 years of age or older. I'd submit that can't possibly be the case. But I do think that even if we were operating on a blank slate, and we're not here because of Stewart, even if we were operating on a blank slate, this would just be just as clarifying. When you start to look to the history of the initial criminal statute of subsection A, these sort of challenges have been raised. I believe the brief cites the Williams case, and all those cases around Stewart also are treating these in parallel. Everybody leading up to the Stewart decision that was addressing what is the mandatory class. I have to stop you for one second. What case are you saying, or cases, are you saying that there was a conflict in the interpretation of what A meant? You know, I won't go as far to say there was a conflict in A. The cases were one-sided. But what decisions were doing in the Williams case, the example of this, it was treating A and B together in trying to determine what this meant. It assumed that the legislature meant the same thing for A in terms of age of the first offense as it meant for B in terms of age of the first offense. So it's not the case that this was fully settled law. It was part of the same body of law. I mean, the state even cites some of these cases that were against my client's position back in, say, 1991 and 1995, I think. I'd make another point that when you look at the cases that Stewart cites, it's not a rule that there must be some kind of ambiguity that courts must be split on a statute for a legislative enactment to clarify. In fact, most of the examples when a legislative enactment is found to be clarifying are ones where there isn't a split. In re-detention of Lieberman, I think, was one of those that involved, does the old offense titled rape qualify for sexually violent person treatment, and it found subsequent legislation to clarify. I think the Parker case that is cited is another example that where the subsequent legislation clarified. Instead of looking just at whether there's a prior split, we just look to the context of the legislation. That what Stewart talks about is the circumstances surrounding the amendment, and we know what the circumstances surrounding the amendment were here. The legislature was concerned about using youthful offenses as a trigger to lock up people for a very long time, and so it amended two subsections in using the exact same language in parallel, and it must have intended the same thing by amending those subsections. Mr. Easton, I have a question though. Going back with the legislative history, your interpretation of the 2021 amendment basically renders the 2016 amendment meaningless. Does it not? Well, your honor, I would suggest that 2016 amendment was always intended as a redundancy. When we look at that 2016 legislation, I think the reply brief is pretty helpful here. It's a fairly large piece of legislation that amends a lot, but one thing it does here is it got rid of a number of dormant references to the death penalty, even though death penalty by then had already been eliminated by statute. And it went through every single place in the criminal code where the possible mandatory life sentence is mentioned and made sure that it wasn't going to create a violation of Graham and Miller, even though Graham and Miller was already established law at that point. At most, it's a cleaner piece of legislation of redundant codification. And this, you know, they painted with a very broad brush across the code. There's nothing in that legislation that said, well, there's some sort of specific intent as to the age of the first prior coming from the legislator. And, you know, even if there was something implied by the 2016 legislation, my clients not unlike, say, the defendant Smallwood, who's convicted under that legislation, my clients convicted for conduct back in 1991 and sentencing, I think, in 1993. What matters is the 2021 legislature's beliefs about what the original statute did. And so even if the 2016 legislature had some different belief, we now know because the 2021 legislature is using the same language to clarify two adjacent subsections. I was just going to say it just, it sounds like you're saying the 2016 amendment means absolutely nothing that the legislature had not made a decision that if you were trying to remember what the 18 years old when you committed the third offense, then you could be sentenced as a habitual criminal. We're supposed to think that they didn't have any reason. It was already established. And I do want to make one other point there is, and this is in the reply brief as well, I haven't seen any under the case law. They essentially did the same thing with a mandatory Class X provision as well in 2016. They just did it over the Class X statute that said you can't send somebody to natural life who is under 18 for being a Class X offender. So, let me ask you another question about the amendment again. So, assuming that the 2021 amendment was a clarification, would it have been a clarification of the statute pre-2016 then? It was a clarification of the statute pre-2016. It would be a clarification, you know, as far back as it goes because it's a clarification of the original intent under Stewart's reasoning. I think it goes back to the 1970s. And there's never been a case in all that time that has said that there was any ambiguity or there was not any interpretations of it from one district to the other. Wait one second. So, you just want to skip over 2016 and act like 2016 didn't happen. That's where I'm having a problem with the logic here. Even if we think 2016 happens, well, 2016 has some sort of redundant consequence. We know the states are more you see in Fuller is based on the notion that the 2016 amendment actually did some sort of change in how people would be sentenced. And we know, because Graham was established at that point, that this was the legislature unafraid of just codifying established rules. And that's what it did in that 2016 legislation. And one other point is the 2016 legislation would then only be by implication because of the time of the final offense. What that would mean is the time of the first offense. It means something by implication as to the first offense. But that would only be, I think, one data point that we have to use against the fact that the legislature chose the same language in the same public act to amend the adjacent statute for the same underlying purpose. And that shouldn't have different consequences. And there's one other thing that Stewart matters, I think, here. We're no longer operating on a blank slate. Instead, Stewart's consequences are the law. Which is, there's long been this sort of graduated sentencing scheme where, based on the severity of the prior and the severity of the current offense, that sets how long a sentence must be. If we have Stewart's result in there saying that priors under 21 don't count and we reach the opposite here, that creates an absurdity because that would mean that very youthful offenses can trigger a natural life sentence. Whereas one has to be 21 to be able to trigger just class X sentencing. And that breaks the scheme. And that is an additional reason that the Stewart court could not have had why A and B should be read consistently and consistent with having the same language. They did make additional changes in the class X sentencing language other than section E, which is this same one that they changed in A. They put in forcible felony. There were several changes. And you're just talking about the one line. I want to ask this. In terms of the 2021 amendment, if we don't have any case law that has looked at this and found conflicting interpretations, why shouldn't we look at this as a substantive change, giving the defendants going forward more rights because of the evolving treatment of youthful offenders? That was the first thing that I thought about. The law certainly is changing. It has the right to change. But how far back do we go? Don't we need some kind of finality in our laws? And something that's been in effect basically since in the 70s, I know, only because I became a lawyer in the 70s. And I remember the habitual statute. I remember reading it because I was a young prosecutor. Why do we go back so far when there's never been a conflict to find an ambiguity rather than to say this is a substantive change we have changed and going forward rather than going back 50 years? Because when I thought about it, somebody could have a habitual conviction from the 70s. Do they have the right now to come back and say, one of my convictions, I was 17, and so now I have the right to be re-sentenced? Our position is they would have that right, Your Honor, and that Stewart's language gives them that right. But I would say there's just— Well, let me ask you this. But doesn't Fuller say contrary to that? Doesn't Fuller say that it doesn't go back retroactively? Yeah, and our argument is Fuller's main point is based on this 2016 legislation. And for the reasons that I've explained, because that 2016 legislation didn't mean to convey anything in particular about the time of the first offense, that Fuller is mistaken on that. There's an oddity in the Fuller case where the defendant was pro se. And so the court, I think, maybe because that doesn't look at this broader context of the statute and what else that legislation did in 2016, where it simply was there to do cleanup where relevant here, to ensure that those were codified. It wasn't—the purpose of the statute wasn't to convey something about the age of the first offense. And that's where I think Fuller's mistaken. I think Fuller's also mistaken just by this belief that we found some difference in the statute is determinative. Because I think it's much more compelling that the 2021 legislature, which we know intended to clarify one subsection, used the exact same language in the other subsection, and it would be absurd. It would convey nothing to the courts if those subsections were to be treated differently. So even if there's one data point in support of treating them differently, I'd submit that that is certainly overcome by the identical language in the same legislation in a parallel subsection. And now, Your Honors, I see my time has already gone over. So if you—so I would ask that this court, you know, follow procedurally what happened in the Durant case, find that the statute should be applied retroactively, find cause, vacate the denial of my client's petition, and order a resentencing. Thank you, counsel. Counsel, Ms. Reed? Good morning again, Your Honors. May it please the court, we ask this court to affirm the decision below where ultimately defendant failed to make a pre-bashous showing of cause and prejudice. I just want to address the concession issue that's going on. He is relying on matters that are technically outside of the record because they were not present—a concession was not considered when it was on this petition itself. So it should not be considered here by this court. And Justice Lampkin, you're correct that this court is under no obligation to accept any concession, whether it's made now or made subsequent. The court has the right to determine what is the actual correct ruling to make here. And a denial of a leave to file a successive petition may be affirmed for any basis that appears in the record. So that should just be something that is highly considered here when it comes to the concession issue. I just want to attach that, yes, defendant's claim is subject to res judicata. He did, in 2003, file a successive petition where he made the claim that the trial court did not find a factual finding that he met the elements of the Habitual Criminal Act at that time, which would have necessarily included whether his predicate offense is qualified. Defendant then abandoned that claim on his appeal from that post-conviction. Counsel, what's your position with regards to what the defendant raised as to us proceeding, even though this issue is before the Supreme Court? I think it's very important to consider that it is before the Supreme Court. We know oral arguments have occurred, so hopefully in the next couple of months we get that opinion out. But it's an issue that carries a lot of consequences. So it should definitely be considered. And I don't think that just going forth and resentencing would be the correct... So what are some of the consequences that we should consider if we proceed? Proceeding, I just... How about the state... I'm sorry, how about the... This is just... It's blowing my mind that I'm having this argument, actually. I'm having a hard time just because the Supreme Court has already heard the argument. The consequences, if we make a decision and the Supreme Court says something else, they're going to send it right back to us to change. And they've already argued, had the same points, all of the same points, argued before them. And I cannot imagine that we won't get a decision, certainly within two months. And I think that... I love hearing your arguments. That's what I can say. I'm enjoying the arguments. But no matter what I think, if the Supreme Court is going to say something different in the next two months, I think that we may have... Well, I can't say what we're going to do. I can say what individually I'd probably hold off to see what the Supreme Court said. But I'm enjoying the arguments. So go on. And you're right there, Justice Lampkin. If this were to be reversed and set down for resentencing, then it would just be an appeal. And depending on what the Supreme Court decides in Brown, it could be overturned of that decision. But I think moving on, just want to touch base on, I know most of this falls under the prejudice prong of where both of our argument lies. But just under cause, defendant could not make a showing of cause. The Banks and Bryant cases that were from the 90s showed that he could have made this argument. It is not determinative of whether there was a success of an argument being made, but it's whether an argument can be made. And it definitely could have been made in an earlier proceeding, despite a low chance of success in that. But mostly moving on to prejudice, Section A of the Habitual Criminal Act was fundamentally altered in 2021. It was not merely clarified, and it does not apply retroactively, despite defendant's contentions. Both Smallwood and Fuller provided a full analysis consistent with the factors that were laid out in Stewart. And that's why both of those cases should be followed here. I think it's very clear that under the first factor, the legislator did not declare that it was clarifying Section A when amending the statute in 2021. Under the second factor, there are no conflicts in the courts before the 2021 amendment. The only conflicts that have now arose are because of the 2021 amendment and Stewart. But before then, every case seems to be on the same page as it pertains to Section A, that juvenile offenses and convictions under the age of 21 did qualify under both versions of the statute pre-2021. So that is a very distinct difference than what we had with Stewart and Subsection B, where B had arose those complications of cases and conflicts. That is what led Stewart to ultimately find it being a clarification. You just can't find the same as it applies to Section A. Importantly, under the third factor, we cannot ignore the history of this section and the way that it has changed throughout the years. It is vastly different than B. To start off with, prior to 2009, these two sections were completely different statutes. When the defendant was sentenced in 1993, Section A was not the same statute as Section B. It was completely two separate things. In 2009, they combined the statutes under one section and they did not change them. Section A still had no age requirement for any predicate offenses, for even the third offense. Section B retained its 21 at the time of the third offense language. At that time, the legislator could have made the sections the same and treated them the same, and they did not. When the changes occurred in 2016, it was not just a superfluous amendment. It is important that it does show that the 2016 amendment adding the language of 18 at the time of the third offense for Section A and leaving Section B alone shows that the decisions of Banks and Bryant and how Section A had always been applied pre-2016 still applied the same way post that amendment. That is very, very different than Section B, than what was found in Stewart. It is very important to consider here. That is why Smallwood and Fuller having those analyses and showing that is what is more appropriate to follow here. Are you saying, does it matter that the 2016 amendment changed the requirements for the third offense, but the 2021 amendment concerned the requirements for the first offense? Does that matter? It does matter. It does matter. Why does it matter? It does matter in terms of when we are looking at the legislator's intent, we are going to always look at each subsequent change. That first change in 2016 of adding that 18 at the third offense did show the legislator's intent at that time that juvenile convictions, convictions under the age of 18 did qualify as predicate offenses. That is important to show that that is what the legislator had always intended at that point. Now, yes, 2021, it is a substantive change because now the legislator is intending something completely different. This goes back to, I believe, Justice Lampkin, you brought up the evolving treatment of how juveniles and youthful adults are being sentenced nowadays. This is the legislator now reflecting that, but it also goes back to a similarity of what we have seen come out of the Supreme Court in cases like Dorsey and Clark regarding Miller issues and proportionate penalties claims. Some of that could be seen through the decision we referenced in our brief, but more recent Bryant case where they talked about Lawson and I believe the other court name was Simmons, a few other cases that did proportionate penalties versions of this. To find that those predicate offenses did qualify at that time as well. We cannot ignore the history. We cannot just say that the 2016 amendment just did not matter because it does, and it is what the legislator did. It really shows the difference in the history of how this section has been applied, and it should not be ignored whatsoever for any of that. That's, again, going back to Smallwood and Fuller. Then just to point out with Fuller, while Smallwood, yes, dealt with the post-2016 amendment, Fuller relying on Smallwood did account for that it did concern the pre-2016, which is what is at issue here since defendant was sentenced in the 90s. With all of that, it is a substantive amendment, and that substantive change does not apply retroactively as the legislator prescribed in the public act that it would take effect on July 1st, 2021. That is clearly under Landgraf. That is not a retroactive amendment. It would be prospective only. Even if we discounted that language that's clearly in the public act, it would still apply prospectively under Section 4 of the Statute of Statutes. If there are no further questions. I don't have any, Justice. No, I don't have any further questions. Thank you. I might ask a question if you don't mind. It's more out of curiosity. You did say you watched or were present at the arguments in the Supreme Court. Justice Cunningham asked both sides what her recent decision in People v. Wallace, did it have any impact on the issue? Neither side seemed to be familiar with that case, but I was wondering if you are familiar with that case and if you have an answer to that question. I am familiar with that case, yes. I included it in my brief as well, but my reading of Wallace is that Stewart is narrowed. It seems that Stewart has been narrowed to only apply to Section B of the statute. That's what I would have to say on Wallace. I will ask you, Mr. Hastings. That's my office. Okay, thank you, Mr. Hastings. Just a couple of points, Your Honor, and you can tell we've all listened to the argument and prepped on Wallace. I do think that Wallace actually helps us because Wallace tells us that legislation matters. This paragraph 23 of Wallace distinguishes the armed habitual criminal statute that fell into possession statute from Stewart because of the intervening later legislation. It talks about that the legislature knows how to express whether defense age at the time of prior conviction affects the status. Our entire position is that that 2021 legislation matters and the same language that was distinguished in Stewart would also be distinguishable for Wallace. The legislation in 2021 matters. Related to that, Your Honor, a second point is we didn't get to talk about cause very much, but my client's cause is based on that 2021 legislation and how it's interpreted in Stewart. That obviously wasn't available to him at the time of his earliest post-conviction proceedings. Normally, in the world of cause, we'd talk about whether it'd be reasonable to assume that a court would fail to appreciate a claim at the time of the first proceeding. That's a quote from Pitsenbarger, I think. And the indication is, had my client in post-conviction petition said that convictions under 21 don't count back in 1992, it's very clear what the result would have been. We've seen that in some of that case law. While, you know, Stewart tells us that the silence age is ambiguity, the courts certainly weren't accepting that back at the time of his initial conviction in his first post-conviction petition. And then I want to make one final point about these evolving standards, which is that these certainly have been in the legislature's mind, and they certainly animated the amendments to these two statutes. But if we think that what we have learned about recidivism, that youthful offenses are less likely to indicate future recidivism than maybe we thought in the 70s or in the 90s, then that would mean there'd be another reason why subsections A and B should be interpreted the same. It can't possibly be the case that the legislature of 2021 made one conclusion as to the likelihood of recidivism for the Class X provision, but made the opposite conclusion for the likelihood of recidivism as to the natural life provision, even though it had harsher consequences. And because it would be absurd to think the legislature used the same thing to create an imbalance in that statute, subsections A and B should be interpreted together. If they're interpreted together, that means my client has cause and he's due resentencing just as the state had conceded in its answer months ago. So therefore, I'd ask that you reverse the judgment below, vacate my client's sentence, and order resentencing. Thank you, Your Honors. Thank you. Any other questions? No. Thank you so much. Justice Reyes, I assume you invited the students.  I'm going to let them show their little, I said little faces. I'm so old I'm thinking of you as children.